# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| MATTHEW BATES, | 3:13-cv-00236-MMD-VPC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| | **OF U.S. MAGISTRATE JUDGE** |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security, | |
| Defendant. | March 27, 2014 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for remand and/or reversal (#18).[1] Defendant filed an opposition and a cross-motion to affirm (#s 23 and 24).[2] Plaintiff replied (#25). For the reasons set forth below, the court recommends that plaintiff's motion for remand (#18) be denied, and defendant's cross-motion to affirm (#24) be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 9, 2009, plaintiff Matthew Bates ("plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act (Administrative Record "AR" 142-43), alleging disability beginning April 1, 2007. *Id*. at 142. Plaintiff alleged disability due to Type II Diabetes, high blood pressure, peripheral neuropathy, retinal neuropathy, hypertension and depression. *Id*. at 171. At the time of the alleged onset of disability, plaintiff was thirty-nine years

---

[1] Refers to the court's docket numbers.
[2] This filing was assigned two docket numbers; hereafter, it will be referred to as #24.

old. *Id*. at 36. He has at least a high school education. *Id*. Defendant Commissioner denied plaintiff's application initially and on reconsideration. *Id*. at 90-101.

On May 24, 2011, plaintiff and his attorney appeared at a hearing before Administrative Law Judge ("ALJ") Mark C. Ramsey. *Id.* at 59-85. The ALJ followed the five-step sequential process for evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and issued a written decision on July 1, 2011, finding plaintiff had "not been disabled" pursuant to the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision. *Id.* at 26-39. Plaintiff appealed, and the Appeals Council denied review. *Id.* at 1-3. Thus, the ALJ's decision became the final decision of the Commissioner.

On May 7, 2013, having exhausted all administrative remedies, plaintiff filed a complaint for judicial review (#1-1). Plaintiff contends the ALJ's decision was based on legal error and that his credibility analysis is not supported by substantial evidence in the record (#18, pp. 6-11). Accordingly, plaintiff asks the court to reverse or remand the ALJ's decision. *Id.* at 11.

## II. STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995) (citation omitted). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id*. at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. 20 C.F.R. § 404.1512(a); *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . " 42 U.S.C. § 423 (d)(1)(A).

### III. DISCUSSION

**A. Five-Step Sequential Process**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii), (c). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

In the third step, the Commissioner determines whether the impairment is equivalent to one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 ("Listed Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen (15) years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). The ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of the work previously performed. *See id.*; *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545. In determining RFC, an ALJ must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. *See* 20 C.F.R. § 404.1545(a).

At step four, the ALJ may consider any of the claimant's daily activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding denial of benefits based in part on determination that claimant performed daily activities that were transferrable to a work setting); compare *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (concluding activities not transferrable to work setting); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be "penalized for attempting to lead [a] normal [life] in the face of [her] limitations"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 2007) (noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f); *see also Berry*, 662 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e), (f); *see also Yuckert*, 482 U.S. at 141-142, 144. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The ALJ may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999).

"The [G]rids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth in rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers

of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

The ALJ may not rely solely on the Grids unless they accurately and completely describe the claimant's abilities and limitations. *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (citation omitted). The ALJ must take the testimony of a vocational expert where the claimant suffers from non-exertional limitations that are "sufficiently severe so as to significantly limit the range of work permitted by his exertional limitation." *Hoopai*, 499 F.3d at 1076 (internal quotation and citation omitted). Further, where the ALJ finds that a nonexertional limitation alone is severe [at step two of the sequential process] (absent any exertional limitation), the ALJ is not required to seek the assistance of a vocational expert at step five unless the nonexertional limitation(s) are "significant, sufficiently severe, and not accounted for in the grid[s]." *See id*. at 1076.

If, at step five, the ALJ establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 689 (9th Cir. 2009). However, "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante*, 262 F.3d at 954.

**B. ALJ's Findings**

The ALJ found that plaintiff suffers from the following severe impairments: insulin dependent diabetes, diabetic peripheral neuropathy, diabetic retinopathy, and hypertension (AR 28). The ALJ also found that plaintiff retains the RFC to perform light work, but with some limitations. *Id.* at 31.

The ALJ considered plaintiff's age, education, work experience and RFC, and found that there are jobs that exist in significant numbers in the national economy that he can perform. *Id.* at 36. Accordingly, the ALJ determined that plaintiff "has not been under a disability," as defined in the Social Security Act. *Id.* at 38. Specifically, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since April 1, 2007, the alleged onset date (20 C.F.R. § 404.1571, *et. seq.*).

2. The claimant has the following severe impairments: insulin dependent diabetes, diabetic peripheral neuropathy, diabetic retinopathy, and hypertension (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant can stand and or walk up to six hours in an eight-hour workday with normal breaks and sit for six hours in an eight-hour workday with normal breaks. He can occasionally climb ramps, stairs, ladders, and scaffolds, and occasionally crouch, squat, and crawl. He can frequently balance, stoop, bend, or kneel. The claimant must avoid even moderate exposure to hazards such as machinery and heights.

5. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

6. The claimant was born on January 14, 1968 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability date (20 C.F.R. § 404.1563).

7. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

8. Transferability of job skills is not material to the determination of disability because using

> the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist inced significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2007, through the date of this decision (20 C.F.R. § 404.1520(g)).

*Id.* at 28-38.

## C. ALJ's Credibility Determination

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence (#18, p. 5). He contends that the ALJ failed to set forth "clear and convincing" reasons for rejecting the claimant's testimony about his pain and limitations. *Id*. at 11.

Congress expressly prohibits granting disability benefits based on a claimant's subjective complaints. 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) (ALJ "will consider" all of a claimant's statements about symptoms including pain, but "statements about your pain or other symptoms will not alone establish that you are disabled"). "An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ must evaluate the credibility of a claimant's subjective testimony in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If the claimant meets the first test and there is no evidence of malingering, the ALJ may

only reject the claimant's testimony about the severity of the symptoms if he or she gives 'specific, clear and convincing reasons' for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter*, 504 F.3d at 1036). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

A claimant's daily activities can demonstrate that she or he has exaggerated the symptoms or limitations. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly recognized that daily activities "did not suggest [the claimant] could return to his old job" but "did suggest that [the claimant's] later claims about the severity of his limitations were exaggerated"); *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment") (citing *Valentine*). The ALJ also considers objective evidence in the record when assessing credibility. 20 C.F.R. § 416.927(c).

A claimant's lack of treatment and/or failure to comply with a treatment plan can undermine his claims of disabling pain and limitations. *See* 20 C.F.R. §§ 404.1529-30; SSR 96-7p; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility," including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.").

The ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that the plaintiff's allegations concerning his level of pain were generally not credible (AR 32, 36). The ALJ detailed plaintiff's long history of diabetes as well as his routine noncompliance with prescribed treatment. He made the following findings:

the medical records revealed that plaintiff self-diagnosed himself with diabetes after testing his blood on a friend's meter. *Id*. at 32. He failed to seek medical attention for "months" because he was in denial about his diagnosis. While plaintiff stated that he saw a doctor regularly and began insulin therapy in 2005, he provided no treatment records prior to September 2008. His Northern Nevada Medical Group September 2008 intake profile indicated that he had been non-compliant with the prescribed treatment of his former physician, had not seen a doctor for two years, and did not regularly check his blood sugar. *Id*. at 32-33, 230-232. While plaintiff testified that he had worked diligently for years with his physician at Northern Nevada Medical Group, Alexander Noche, M.D., Dr. Noche's treatment notes indicated that plaintiff went for large periods of time without seeking any treatment and routinely failed to follow his prescribed treatment plans. *Id*. at 78, 34-35, 231-232. The plaintiff told his doctors that he did not like giving himself injections, and he refused any insulin medications other than Lantus, even though his diabetes was not well-controlled. *Id*. at 33. He routinely failed to test his blood glucose properly and decreased his Lantus intake against Dr. Noche's orders. *Id*. at 34.

Plaintiff acknowledges that noncompliance with a prescribed course of treatment is relevant to the credibility analysis, but he argues that he was not entirely non-compliant and that he had good reasons for noncompliance (#18, p. 9). He now claims in his motion that he did not want to take insulin because it was too expensive and he did not have insurance because he could not work due to sore feet. *Id.*; Northern Nevada Medical Group intake notes, AR 231. Plaintiff contends that he unsuccessfully attempted to control his diabetes with Lantus, diet and exercise. (#18, p. 9). Plaintiff also complains that the ALJ improperly discredited him on the basis that plaintiff asked Dr. Noche to note in his records that plaintiff was starting to experience bilateral hand numbness because he was applying for disability. *Id*. at 10. Plaintiff argues that this was an emerging symptom at the time of

that appointment, about one month prior to the ALJ hearing. *Id*. Finally, plaintiff asserts that the ALJ improperly discredited his complaints of retinopathy on the basis that "the records reveal no treatment for this condition other than Dr. Noche's efforts to control the claimant's diabetes," when the fact is that no cure for retinopathy exists. *Id*.

Defendant argues the following: the ALJ appropriately found that plaintiff's lack of treatment and failure to comply with his treatment plan undermined his claims of disabling pain and limitations (#24, p. 5; 20 C.F.R. §§ 404.1529-30). Although plaintiff now summarily alleges that his insulin medication was too expensive, he testified before the ALJ that he had fully complied with Dr. Noche's treatment plans, which included increasing his Lantus dosage and properly monitoring his blood sugar levels (#24, p. 7). Plaintiff also provided the ALJ with an extensive list of his alleged medications, including Vicodin, Ultracet, Tramadol, Gabapentin, Januvia, Metformin, Lantus, and Glipizide. *Id*. at 7-8; AR 75-76. Plaintiff did not testify that he could not afford these medications, but instead created the impression that he vigilantly took his medication every day (#24, p. 8; AR 75-76). Plaintiff has not alleged that he lacks access to free or low-cost medical services, and he regularly accessed medical services including physician visits, diagnostic testing and prescription medication from 2008 to 2011 (#24, p. 8; AR 230-74, 301-07, 326-407). The ALJ merely noted that plaintiff wanted his alleged hand limitation to be on record for his disability case, but gave no indication as to what weight or any negative inferences he did or did not draw (#24, p. 8; AR 35). Finally, while, according to plaintiff, no cure exists for retinopathy, plaintiff did not comply with physician instructions to obtain annual eye exams (#24, p. 8; AR 232, 240-41).

The court determines that the ALJ properly considered plaintiff's "unexplained or inadequately explained failure to . . . follow a prescribed course of treatment" and determined that it detracted from his credibility. *Tommasetti*, 533 F.3d at 1039. The ALJ permissibly inferred that

plaintiff's pain is not as all-disabling as he represented when plaintiff routinely failed to follow many aspects of his prescribed treatment program. *See id*. The court agrees with defendant that plaintiff failed to establish good cause for failure to follow his prescribed treatment plans. Absent from plaintiff's testimony before the ALJ is any indication that plaintiff could not afford to follow the prescribed treatment plans. The ALJ permissibly concluded that the evidence established that plaintiff failed to take his medication as directed because he was resistant to taking insulin medication and to testing his blood sugar levels and not because he could not afford treatment.

The court notes the Sixth Circuit's observation that "[t]he Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriad choices in life, and the choices we make, whether we like it or not have consequences." *Sias v. Sec'y of Health & Human Services*, 861 F.2d 475, 480 (6th Cir. 1988). The court concludes that the ALJ's finding that plaintiff's voluntary and routine decisions to disregard his physicians' advice undermined his credibility is supported by substantial evidence and free of legal error.

### IV. CONCLUSION

Based on the foregoing, the court concludes that substantial evidence in the record supports the ALJ's credibility determination. The ALJ did not err in determining that plaintiff's testimony as to the extent and severity of his symptoms and limitations was not entirely credible. The court recommends that plaintiff's motion for remand/reversal (#18) be denied and defendant's cross-motion to affirm the Commissioner's decision (#24) be granted. The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand/reversal (#18) be **DENIED** and defendant's cross-motion to affirm the Commissioner's decision (#24) be **GRANTED**.

**DATED:** March 27, 2014.

_____
**UNITED STATES MAGISTRATE JUDGE**